UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| G. KENT PLUNKETT,   )  <br>        Plaintiff,   )  <br>                    )  <br>        vs.         )  <br>                    )  <br> VALHALLA INVESTMENT )  <br> SERVICES, INC., et al. )  <br>        Defendants. )  <br>                    ) | CIVIL ACTION NO.: 04 CV 10765 NG |

### PLAINTIFF G. KENT PLUNKETT'S OPPOSITION TO DEFENDANTS VALHALLA INVESTMENT SERVICES, INC. AND ERIC T. HOUSE'S MOTION TO DISMISS

Over a year after filing their Answer to Plaintiff G. Kent Plunkett's Complaint for Breach of Fiduciary Duty, a violation of Section 10(b) of the Exchange Act, and a violation of Chapter 110A of the Massachusetts Securities Laws, Defendants Valhalla Investment Services, Inc. ("Valhalla") and Eric T. House move to dismiss Mr. Plunkett's Complaint, claiming that this Court lacks personal jurisdiction[1/] over them and that venue is improper.

This is a case where Defendants entered into a fiduciary relationship with Mr. Plunkett, a resident of Massachusetts. Mr. House became Mr. Plunkett's investment advisor and invested Mr. Plunkett's money. Mr. House sent Mr. Plunkett the agreements to establish the relationship in Massachusetts and Mr. Plunkett sent his investment funds

---

[1/] Although Defendants cite to Fed. R. Civ. P. 12(b)(2) (lack of jurisdiction over the person), (4) (insufficiency of process), and (5) (insufficiency of service of process) at the start of its Motion, they only make arguments with respect to personal jurisdiction and venue. Nothing in the substance of Defendants motion mentions insufficient process or service of process, which may be waived if not timely asserted, particularly in light of the fact that Defendants submitted their Answer to Mr. Plunkett's Complaint on July 2, 2004. See Fed. R. Civ. P. 12(h)(1); Marcial Ucin, S.A. v. SS Galicia, 723 F.2d 994, 996-97 (1st Cir. 1983). Accordingly, Mr. Plunkett reserves all of his rights to respond to a Motion to Dismiss pursuant to Rule 12(b)(4) or 12(b)(5), if that is what Defendants intended.

to Mr. House from Massachusetts.  Acting as Mr. Plunkett's investment advisor, Mr. House sent Mr. Plunkett letters to his home in Massachusetts, Mr. House and his agents placed telephone calls and sent mail, faxes and emails to Mr. Plunkett and his representatives in Massachusetts, and Mr. House sent investment summaries and billing information to Mr. Plunkett in Massachusetts.  Additionally, Mr. House, through his fund Valhalla Investment Fund, purchased over 100,000 shares of preferred stock in Mr. Plunkett's company, Salary.com, which has its principle place of business in Massachusetts.

Accordingly, this Court should deny Defendants' Motion to Dismiss because, contrary to Defendants assertions, G.L. c. 233A § 3(a) authorizes this Court to assert personal jurisdiction over Valhalla and Mr. House.  This section of the Massachusetts Long Arm Statute provides that a court "may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's (a) transacting any business in this commonwealth."  This action arises directly out of Defendants transaction of business in Massachusetts.  Further, this Court's assertion of jurisdiction over Defendants does not violate federal standards of due process.  Finally, because this Court has jurisdiction over Defendants and because substantial events related to this litigation took place in Massachusetts, venue is proper.

## FACTUAL BACKGROUND

Plaintiff G. Kent Plunkett has lived in Massachusetts for virtually his entire life.  See Exhibit A, Affidavit of G. Kent Plunkett, at ¶ 1.  He currently resides in Wellesley, Massachusetts and is the founder and CEO of Salary.com, a Delaware Corporation based in Needham, Massachusetts.  See id. at ¶¶ 1, 2.  Mr. Plunkett was introduced to Mr.

House through relatives who were Mr. House's clients. See id. at ¶ 3. Some of Mr. Plunkett's relatives, who are also Mr. House's clients, including Mr. Plunkett's mother, live in Massachusetts. See id. at ¶¶ 3-5.

In early 2000, Mr. Plunkett contacted Mr. House to discuss opening an account with him and having Mr. House handle his investments. See id. at ¶ 4. Mr. House is a Registered Investment Advisor with the Securities and Exchange Commission based in Ohio. See id.; Exhibit B, Affidavit of Eric T. House at ¶ 1. In the discussions (between Mr. Plunkett in Massachusetts and Mr. House in Ohio) leading up to Mr. Plunkett's investment, Mr. House informed him that he would day trade with Mr. Plunkett's funds (as well as his other clients) and then allocate equitably gains and losses among his clients. See Plunkett Affidavit at ¶ 11. The allegation in the Complaint is that Mr. House misrepresented his intentions and unfairly allocated losses to Mr. Plunkett in violation of his fiduciary duty and Section 10(b).

Shortly thereafter, in March 2000, at Mr. House's instruction, Mr. Plunkett opened a brokerage account with Bear Stearns naming Mr. House as his Investment Advisor. See Plunkett Affidavit at ¶ 6. In order to open such an account, Mr. House sent Mr. Plunkett the Bear Stearns "Report of New Account" from Ohio to his home in Massachusetts. See id. Upon opening the account with Mr. House, Mr. Plunkett invested $1,000,000 with him by sending the money to him from his BankBoston account Massachusetts. See id. at ¶ 10.

During the time Mr. House managed Mr. Plunkett's money, Mr. Plunkett or his representative spoke with either Mr. House or his representatives on the telephone several times a year about his account. See id. at ¶ 7; Exhibit C, Affidavit of Melissa

Cornacchini at ¶ 5.  Mr. Plunkett also received correspondence from Mr. House at his home in Massachusetts.  See Plunkett Affidavit at ¶ 7; see also Motion to Dismiss at 3 ("All contact between House and Plaintiff has been by telephone or mail.").  Additionally, Mr. House's secretary faxed and emailed Mr. Plunkett's assistant in Needham, Massachusetts, information about Mr. Plunkett's account.  See Plunkett Affidavit at ¶ 7; Cornacchini Affidavit at ¶ 5.  Mr. Plunkett's assistant, Melissa Cornacchini, who is located in Massachusetts, also received phone calls, faxes and emails several times a year from Mr. House's representatives related to Mr. Plunkett's accounts. See id.

In the fall of 2000, Mr. House through Valhalla made a $100,000 investment in Salary.com by purchasing 101,533 shares of preferred series D stock, which it still owns today.  See Plunkett Affidavit at ¶ 9; Cornacchini Affidavit at ¶ 3.  Mr. House is listed as the contact for Valhalla in Salary.com's records.  See id.

The present lawsuit arises from Mr. Plunkett's investment of $1,000,000 with Mr. House and Valhalla, of which $930,000 was lost.  See Plunkett Affidavit at ¶ 10.  Mr. Plunkett sued Mr. House and Valhalla for breach of fiduciary duty, a violation of Section 10(b) of the Exchange Act, and a violation of Massachusetts General Laws Chapter 110A.  See id. at ¶ 12; Complaint.

**ARGUMENT**

**I.    THIS COURT MAY EXERCISE PERSONAL JURISDICTION OVER MR. HOUSE AND VALHALLA PURSUANT TO G.L. c.223A BECAUSE THIS ACTION ARISES DIRECTLY FROM DEFENDANTS' TRANSACTION OF BUSINESS IN MASSACHUSETTS AND COMPORTS WITH FEDERAL DUE PROCESS REQUIREMENTS.**

Determining personal jurisdiction is a two-step inquiry.  First, jurisdiction must exist under the Massachusetts long-arm statute.  See Mass. Gen. Laws. C. 223A, § 3.

4

Second, if jurisdiction is authorized under the statute, this Court must address whether "jurisdiction is consistent with basic due process requirements mandated by the United States Constitution." Haddad v. Taylor, 32 Mass. App. Ct. 332, 334 (1992) (citing Good Hope Indus., Inc. v. Ryder Scott, Co., 378 Mass. 1, 5-6 (1979); Ealing Corp. v. Harrods, Ltd., 790 F.2d 978, 983 (1st Cir. 1986); Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 144 (1st Cir. 1995). Defendants' own actions satisfy each step of the inquiry, making this Court's jurisdiction over Mr. House and Valhalla proper.

### A. Jurisdiction Over Mr. House and Valhalla Exists Pursuant to G.L. c. 233A.

Pursuant to §3(a)[2/] of G.L. c.223A, this Court may exercise personal jurisdiction over a defendant, like, Mr. House or Valhalla, when the action arises from the defendants' transaction of any business in this Commonwealth. The transacting business provision of G.L. c.223A, §3(a) has been construed broadly, and reaches any purposeful acts of the defendant, whether personal, private, or commercial. Hahn v. Vermont Law School, 698 F.2d 48, 50 (1st Cir. 1983); Nova Biomedical Corp. v. Moller, 629 F.2d 190, 193-194 (1st Cir. 1980); Morse v. Walt Disney World Co., 675 F. Supp. 42, 43 (D. Mass., Caffrey, J., 1987). As one Court remarked, the requirements of this section are

---

[2/] Defendants also refer to sub-sections (c) and (d) of G.L. c. 223A, § 3, the Massachusetts Long-Arm statute. The language in § 3 is disjunctive, requiring a plaintiff to satisfy only one of the seven ways a court may exercise jurisdiction over a person. Mr. Plunkett believes he has satisfied the "transacting business" provision of § 3(a). It is noteworthy, however, that in referencing § 3(c), see Motion to Dismiss at 4-5, Defendants cite to Northern Light Technology, Inc. v. Northern Lights Club, where the court found that by sending information into Massachusetts, whether by mail or via the Internet, and knowing that it would result in doing business with a Massachusetts resident, § 3(c) was satisfied. See 97 F. Supp.2d 96, 105 (D. Mass, Woodlock, J., 2000). Applying this holding to the present case would also satisfy jurisdiction under § 3(c), because Defendants sent information about his account to Mr. Plunkett in Massachusetts. Likewise, Defendants also reference § 3(d), see Motion to Dismiss at pp. 4-5, and cite to Hasbro v. Clue Computing, Inc., 994 F. Supp. 34, 43 (D. Mass., Woodlock, J., 1997), where the court found that by maintaining a web-site which Massachusetts residents could easily access and which allowed for the solicitation of business of Massachusetts residents, § 3(d) was satisfied. See id. at 44; see also Northern Lights, 92 F. Spp.2d at 105 (holding that because the defendant regularly solicited business in Massachusetts, § 3(d) was satisfied.). Given that Defendants have multiple clients in Massachusetts, and regularly communicate with them by phone, fax and email, the jurisdictional requirements of § 3(d) should also be satisfied.

5

"relatively easy to satisfy." Morse, 675 F. Supp. at 43. Indeed, "even somewhat exiguous acts on a defendant's part can, at times, suffice to satisfy the long-arm statute's threshold for transacting business." United Elec.Radio and Machine Workers v. 163 Pleasant Street Corp., 960 F.2d 1080, 1087 (1st Cir. 1992); see also Sonnabend v. Sorrentino, 866 F. Supp. 651, 653 (D. Mass., Harrington, J., 1994) ("single act within the Commonwealth may be sufficient"); A-Connoisseur Transportation Corp. v. Celebrity Coach, Inc., 742 F. Supp. 39, 42 (D. Mass., Mazzone, J., 1990) ("even an isolated, one-shot transaction with little impact on the commerce of the Commonwealth may constitute transacting business").

A defendant need not have any physical presence in Massachusetts to meet the transacting business requirement of G.L. c.223A, §3(a). E.g., United Elec. Workers, 960 F.2d at 1087; Good Hope Industries, Inc. v. Ryder Scott Co., 378 Mass. 1 (1979). As the Supreme Judicial Court stated in Good Hope,

> Modern technology has taken us far beyond the point where two men must stand in each other's physical presence to transact business. Widespread use of the telephone and the mails make[s] actual physical presence unnecessary in many cases.

378 Mass. at 11 (citations omitted). Rather than physical presence, what is significant is:

> that the defendant's contacts with the forum were deliberate and not fortuitous, such that 'possible need to invoke the benefits and protections of the forum's laws was reasonably foreseeable, if not foreseen, rather than a surprise.'

Good Hope, 378 Mass. at 11, quoting Product Promotions, Inc. v. Cousteau, 495 F.2d 483, 496 (5th Cir. 1974).

For example, in Hahn v. Vermont Law School, 698 F.2d 48, 50 (1st Cir. 1983), the First Circuit found that the defendant was subject to suit in Massachusetts under G.L.

6

c.223A, §3(a) based on fewer contacts with Massachusetts than the Defendants had in this matter.  The plaintiff in Hahn sued the defendant, Vermont Law School ("VLS"), in Massachusetts for breach of contract because of a failing grade that he received during his third year at the law school.  Id. at 49.  The law school moved to dismiss the plaintiff's action for lack of personal jurisdiction, arguing, like Defendants here, that "[i]ts only place of business is in South Royalton, Vermont; it has never maintained any campus, office, bank account, mailing address, or telephone listing in the Commonwealth of Massachusetts, nor is it licensed to do business there."  Id.  The law school further argued that its relevant contacts with Massachusetts did not constitute transacting business under G.L. c.223A, §3(a).  Id. at 50, 51.  These contacts included the mailing of application information to the plaintiff in Massachusetts, at plaintiff's request, and, after receiving an application from the plaintiff, mailing to him an offer of admission, which plaintiff accepted.  Id.  In reversing the lower court's dismissal of plaintiff's action for lack of personal jurisdiction, the First Circuit stated:

> The purposeful actions of VLS in mailing to Hahn in Massachusetts application information and an acceptance letter were sufficient, without more, to constitute transacting business under the broadly construed Massachusetts long-arm statute.

Id. at 51.  Notably, the court in Hahn made this ruling even though, like Mr. Plunkett, "the Massachusetts plaintiff initiated the communications culminating in the contract."  Id.

There is also no question that Mr. Plunkett's claims arise out of Defendants' transaction of business in Massachusetts, specifically the fiduciary and contractual relationship arising from Defendants management of Mr. Plunkett's investments.  Hahn v. Vermont Law School, 698 F.2d 51.  As the Court in Hahn noted, the fact that the

7

activities underlying the breach occurred out-of-state cannot defeat the "arising from" component of G.L. c.223A, §3(a):

> The district court noted that this cause of action for breach of contract stemmed from activities -- Hahn's receipt of a failing grade and his efforts to resolve the matter through administrative channels -- occurring in Vermont. Although the Massachusetts courts have not defined the scope of the "arising from" requirement of the long-arm statute, we have no doubt that it has been satisfied when the cause of action is for an alleged breach of contract and the business transacted was instrumental in the formation of the contract. Any determination of whether VLS has breached the contract will depend upon the terms of the contact, and such terms may include statements contained in the application information and acceptance letter VLS mailed to Hahn.

Id. at 51.

Similarly, in Tatro v. Manor Care, Inc., which Defendants cite in their Motion, the Supreme Judicial Court held that jurisdiction was proper under G.L. c. 223A, § 3(a) when a California company that had no place of business or any agents in Massachusetts, solicited business in Massachusetts by mail and entered into an agreement with the Plaintiff to provide hotel accommodations in California. See 416 Mass. 763, 767-773 (1994). In Tatro, the defendant hotel hosted a conference for the American Council of Hypnotist Examiners in its Anaheim, California location, with mailings to all members proposing special rates at the hotel. See id. at 765. Plaintiff, a Massachusetts resident, received the mailing and contacted the defendant hotel by telephone to make her hotel reservation. See id. at 766. Plaintiff traveled to California and stayed at Defendant's hotel where she injured herself by falling in the bathtub in her room. See id. Plaintiff brought an action for personal injury against the hotel in Massachusetts Superior Court. See id. The Supreme Judicial Court held that the defendant's "acceptance of plaintiff's room reservation formed part of the defendant's overall purposeful solicitation of hotel

8

business from residents of Massachusetts," and found that such "relatively minor contacts" with Massachusetts were sufficient to satisfy the transacting business requirement set out in § 3(a). Id. at 768.

In addition to Hahn and Tatro, Massachusetts courts have exercised jurisdiction over defendants under G.L. c.223A, §3(a) in cases where the defendant's contacts with Massachusetts, from out-of-state, were substantially similar to those of Mr., House and Valhalla in the present matter. E.g., Ealing Corp. v. Harrods Ltd., 790 F.2d 978, 983 (1st Cir. 1986) (sending of telex from the United Kingdom to Massachusetts plaintiff by defendant constituted transacting business in Massachusetts); Buctouche Fish Market, Ltd. V. City Sea Foods, Inc., 735 F. Supp. 441, 442 (D. Mass., McNaught, J., 1990) (defendant's out-of-state telephone calls to plaintiff in Massachusetts during the negotiation of the contract at issue for sale of lobsters to defendants outside Massachusetts and the implementation of contract constituted transacting business in Massachusetts); Marine Charter & Storage Ltd., Inc. v. Dennison Marine, Inc., 701 F. Supp. 930, 932 (D. Mass., Young, J., 1988) (numerous telephone calls, mailings and telecopier transmissions between plaintiff's office in Massachusetts and defendant's office in Florida regarding contract, bills sent to Massachusetts and payments sent to Florida, and sale of yacht to Massachusetts corporation constituted transacting business in Massachusetts). See also Carlson Corp. v. University of Vermont, 380 Mass. 102, 105 (1980) (the signing of a contract in Massachusetts, for services to be performed entirely in Vermont, was found to constitute the transaction of business in Massachusetts.). Indeed, it has previously been held that "even an isolated, one-shot transaction with little impact on the commerce or the Commonwealth may constitute transacting business" in

9

the state sufficient to support jurisdiction.  Connoisseur Transportation v. Celebrity Coach, 742 F. Supp. 39.

Applying this governing case law to the action at hand, it is "relatively easy" to find that Defendants' dealings with Mr. Plunkett constituted the transacting of business in Massachusetts sufficient for the invocation of personal jurisdiction over Defendants. Morse, 675 F. Supp. at 43.  First, like the plaintiffs in Hahn and Tatro, Mr. Plunkett contacted Mr. House and Valhalla about establishing an investment advisory relationship with them.  Mr. Plunkett opened a brokerage account at Mr. House's direction and after Mr. House sent Mr. Plunkett the form to Massachusetts.  In establishing the account, the form, which both Mr. Plunkett and Mr. House signed, gave Mr. House discretion over Mr. Plunkett's investment funds, which were drawn from a bank in Massachusetts and sent to Mr. House from Massachusetts.  Mr. House and his representatives at Valhalla also maintained telephone, fax and mail contact with Mr. Plunkett.  Additionally, Defendants made a $100,000 investment in Mr. Plunkett's company, which is based in Massachusetts, and wired money for their investment to Massachusetts.  It is therefore obvious that Defendants, who made deliberate contacts with Mr. Plunkett by soliciting and accepting Mr. Plunkett's investment business, investing in Mr. Plunkett's company, and maintaining telephone, fax and mail contact with him, transacted business in the Commonwealth.  See Tatro, 416 Mass. at 768.

### B. The Assertion of Personal Jurisdiction Over Mr. House and Valhalla Comports with Federal Due Process Requirements.

Defendants fiduciary relationship with Mr. Plunkett, specifically the management of $1,000,000 of Mr. Plunkett's money sent to them from Massachusetts and the related mail, fax and telephone contacts with Mr. Plunkett and his representatives in Massachusetts, establishes that this Court's exercise of jurisdiction over Mr. House and Valhalla is consistent with the requirements of the Due Process Clause of the United States Constitution.  This test is satisfied where, as here, (1) the claim underlying the litigation directly arises out of or relates to the defendant's forum-state activities; (2) a defendant has purposely availed itself of, or purposely directed, its activities at the law and/or the residents of Massachusetts so that it had fair warning of its susceptibility to suit in the courts of the Commonwealth, and (2) in the total calculus of the circumstances, the exercise of jurisdiction complies with traditional notions or expectations of reasonableness and substantial justice and fair play.  Asahi Metal Industry co. v. Superior Court, 480 U.S. 102, 108-116 (1987); Burger King v. Rudzewicz, 471 U.S. 462, 471-478 (1985); Northern Lights Technology, Inc. v. Northern Lights Club, 97 F. Supp.2d 96, 106-09 (D. Mass., Woodlock, J., 2000); Heins v. Wilhelm Loh Wetzlar Optical Machinery GmbH & Co., 26 Mass. App. Ct. 14, 21-27 (1988).

With respect to the first element, the claim underlying the litigation must arise out of, or relate to, the defendant's forum-state activities.  See United Elec. Workers of America, 960 F.2d at 1089.  This Court's assertion of personal jurisdiction over Defendants meets the relatedness factor of the due process analysis because this action relates directly to Mr. House's and Valhalla's breach of a fiduciary duty owed to Mr. Plunkett by acting as his investment advisor.

11

With respect to the second element, a defendant will be deemed to have engaged in "purposeful availment" if he has intentionally directed business activities toward the forum state, even without physical presence there.  Burger King, 471 U.S. at 475-476.  In this case, Mr. House and Valhalla sent Mr. Plunkett a brokerage application in Massachusetts, which they all signed, they entered into a fiduciary relationship with Mr. Plunkett to manage his money, maintained contacts with him by telephone, fax and mail, and invested in Mr. Plunkett's Massachusetts-based company by purchasing over $100,000 of preferred stock in 2000, which they still own.  Thus, Defendants have deliberately directed business activities to Massachusetts, despite their lack of physical presence in Massachusetts.

Finally, with respect to reasonableness and "substantial justice and fair play," courts typically consider (1) the burden on the defendant of appearing in Massachusetts; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all sovereigns in promoting substantive social policies.  Burger King Corporation, 471 U.S. at 477, quoting World Wide Volkswagen Corporation v. Woodron, 444 U.S. 286, 292 (1980); United Elec. Workers, 987 F.2d at 39; Hasbro Inc. v. Clue Computing, Inc., 994 F. Supp. 34, 45 (D. Mass., Woodlock, J., 1997); Heins, 26 Mass. App. Ct. at 25-26.

Here, the Defendants have established the requisite minimum contacts with Massachusetts by knowingly entering into a fiduciary relationship with a Massachusetts citizen.  Specifically, this Court's assertion of jurisdiction over Mr. House and Valhalla is reasonable and comports with traditional notions of substantial justice and fair play.

First, there will be no impermissible burden imposed on Defendants if this action proceeds in this state. Indeed, Defendants have been litigating this action here for almost a year, and have not provided this Court with any evidence that they have been unduly burdened. While depositions of Mr. House and Valhalla employees may have to be conducted in Ohio, or elsewhere, it is Mr. Plunkett's counsel that will have to travel to Ohio to take these depositions, while Defendants' Ohio counsel, who has been admitted *pro hac vice* in this action, will not have to travel at all for these depositions. Further, since Defendants have counsel in Massachusetts to defend this action, they do not face any financial hardship in defending this action here. In addition, as a "citizen" of this Commonwealth, Mr. Plunkett has a substantial interest in having this matter litigated in this forum, as does the Commonwealth in ensuring that its residents are afforded the opportunity to have disputes regarding their businesses and investments adjudicated in the courts in this state. In light of the foregoing, it is apparent that traditional notions of reasonableness and justice and fair play will not be offended if Mr. House and Valhalla are required to defend an action against them in Massachusetts.

Because the assertion of jurisdiction over Defendants is authorized by G.L. c.223A, §3(a), and the exercise of such jurisdiction is consistent with basic due process requirements, this Court properly can and should exercise personal jurisdiction over Mr. House and Valhalla.

**II.    BECAUSE THIS COURT HAS PERSONAL JURISICTION OVER MR. HOUSE AND VALHALLA AND BECAUSE A SUBSTANTIAL PART OF EVENTS OCCURRED IN MASSACHUSETTS, THE PROPER VENUE FOR THIS ACTION IS MASSACHUSETTS**

Because this Court properly can and should exercise personal jurisdiction over Mr. House and Valhalla and because a substantial part of the key events behind this

lawsuit took place in Massachusetts, venue is also proper.  According to 28 U.S.C. § 1391(a),

> A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

In this case, Defendants are incorrect in claiming that that venue is not proper, because under § 1391(a)(2) a "substantial part of events" did occur in Massachusetts.  Indeed, several events material to Mr. Plunkett's pending claims occurred in Massachusetts, even though other activities occurred in Ohio.  See Uffner v. La Reunion Francaise, S.A., 244 F.3d 38, 41-43 (1st Cir. 2001) (noting that in determining whether location is "substantial," court must look to entire sequence of events underlying claim, rather than try to identify single triggering event ); see also Camar Corporation v. N.R. Acquisition Corp., Civ. A. NO. 96-40095-NMG, 1997 WL 118419, at *6 (D. Mass, Gorton, J., Mar. 11, 1997) (holding that venue was proper in Massachusetts based on phone calls, faxes made into the Commonwealth and payments made through a Massachusetts bank).

In this case, and when looking at the entire sequence of events beyond the Defendants' trading activity in Ohio, Mr. House and Valhalla established Mr. Plunkett's account with them by sending him the brokerage account application to his home in Massachusetts.  Both Mr. Plunkett and Mr. House signed this form.  Mr. Plunkett drew $1,000,000 in funds for the account from a bank in Massachusetts and sent the money from Massachusetts to Mr. House in Ohio.  Mr. House and representatives from Valhalla also communicated with Mr. Plunkett and his representatives in Massachusetts by using

telephones, faxes and emails to discuss his account with them.  Finally, Mr. House and Valhalla made an approximately $100,000 investment with Mr. Plunkett's Massachusetts company purchasing shares in December 2000 which they still hold.  Thus, in light of these events, this Court should find that venue is proper in Massachusetts.

## **CONCLUSION**

For all of the foregoing reasons, this Court should deny the Defendants' Motion to Dismiss.  Mr. Plunkett has established that this Court may exercise personal jurisdiction over Defendants pursuant to G.L. c. 223A, § 3(a), arising from Mr. House and Valhalla's transaction of business in Massachusetts, and that such jurisdiction comports with federal due process requirements.  Further, because the Court has jurisdiction and because a substantial part of the events behind the litigation occurred in Massachusetts, venue is proper.  Should this Court determine that it needs additional information with respect to jurisdiction, Mr. Plunkett respectfully requests that Discovery be allowed to conclude before any decision is made.

WHEREFORE, Plaintiff G. Kent Plunkett respectfully requests that this Court deny Defendant Eric T. House's and Defendant Valhalla Investment Services, Inc.'s Motion to Dismiss.

Respectfully submitted,

G. KENT PLUNKETT

By his attorneys,


/s/ H. Joseph Hameline\
H. Joseph Hameline, BBO #218710\
MINTZ, LEVIN, COHN, FERRIS,\
   GLOVSKY AND POPEO, P.C.\
One Financial Center\
Boston, MA  02111\
Tel.  (617) 542-6000

Dated:  September 13, 2005